Nicole Lewis (State Bar No. 217237)
Rebecca Horne (Pro Hac Vice to be submitted)
**LawHQ, LLC**
299 S. Main St. #1300
Salt Lake City, UT 84111
Phone: (385) 233-6612 ext. 3152
nicole.lewis@lawhq.com
rebecca@lawhq.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **Jesse Seale**, and **Nils Coleman**<br><br>Plaintiffs,<br><br>v.<br><br>**GoSmith, Inc.**, and **DOES 1-25**,<br><br>Defendant | Case No.:<br><br>**VERIFIED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**Introduction**

Jesse Seale and Nils Coleman ("Plaintiffs") bring this action seeking to enforce Plaintiffs' rights to privacy under the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. The TCPA is a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. See *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012). The legislative history of the bill's inception shows how seriously Congress took the people's mandate to protect their privacy, calling robocalls "the scourge of modern civilization," and stating that "[c]onsumers around the country are crying out for Congress to put a stop to these [calls]." Senator Hollings (SC), "Automated Telephone Consumer Protection Act,"

*Congressional Record*, 137 Cong. Rec. at S16205 (November 7, 1991) 1991 WL 229525. Available from Westlaw, last accessed on October 16, 2019.

GoSmith, Inc. ("Defendant") has blatantly violated the TCPA by using an automatic telephone dialing system, or "ATDS", to send hundreds of telemarketing text messages to Plaintiffs' cellular telephone number for the purposes of advertising its goods and services.

Plaintiffs have standing under the TCPA to bring this action before the Court, which Plaintiffs now do, and respectfully request relief.

## I.  Parties

1. Plaintiff Jesse Seale, ("Seale"), is a resident of Alabama, and a "person" as defined by 47 U.S.C. § 153 (39).

2. Plaintiff Nils Coleman, ("Coleman"), is a resident of Wisconsin, and a "person" as defined by 47 U.S.C. § 153 (39).

3. Defendant GoSmith, Inc. ("GoSmith") is a Delaware corporation with its principal place of business at 1250 Borregas Ave, Sunnyvale, CA 94089.

## II.  Jurisdiction and Venue

4. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, as the action arises under the TCPA, which is a federal statute.

5. This Court has personal jurisdiction over Defendant because it resides in this District.

6. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant is a resident of this District.

## III.  Statement of Facts Common to All Claims

7. Seale's phone number ending in 6655 is registered to a cellular telephone.

8. Coleman's phone number ending in 7474 is registered to a cellular telephone.

9. GoSmith has sent Seale at least 400 text messages since 2017.

10. GoSmith has sent Coleman at least 400 text messages since 2016.

11. The following are some examples of messages GoSmith has sent:

    a. On December 26, 2018, GoSmith texted Seale from the number 650-250-7908: "We've got a new bath remodel project for you in Bay Minette. Job size is $5500-$6000. Reply 1 if interested, 3 if not"

    b. On April 30, 2019, GoSmith texted Seale from the number 650-250-7908: "Appointment Requested! Job#5102440 in Flomaton. Contact the customer via your Smith account at (334) 759-3468uhft"

    c. On December 2, 2019 GoSmith texted Coleman from the number 650-814-3200: "Hi, a homeowner in Marinette is looking for an estimate for snow removal. You have highest priority. Reply 1 if interested, 3 if not."

    d. On December 12, 2019 GoSmith texted Coleman from the number 650-622-2236: "Mitchell is in need of snow removal in Marinette. First priority is yours. Reply 1 if interested, 3 if not."

12. Coleman responded to the December 12, 2019 message with "1", and received an immediate and automated response which said: "Great! We're Smith, we connect you with homeowners that need projects done. It's always free to view project details. Reply 1 to get started, 2 to learn more".

13. Defendant's text messages were for the purpose of telemarketing and soliciting business.

14. Defendant knowingly and willfully sent the text messages to Plaintiffs via an ATDS, as defined by 47 U.S.C. § 227(a)(1), which has the capacity to store numbers to be called and to dial such numbers.

15. The system Defendant used to send the text messages is also a predictive dialer, automatically sending new leads to specific contractors, using an algorithm and formula.

16. The text messages sent by Defendant are typical of messages sent using an ATDS because the text messages were sent from many different numbers instead of one number to avoid being blocked; the text messages ask for the recipient to respond with "1" or "3" and when the recipient responds, the recipient receives an automated and immediate response; many people have reported getting unsolicited text messages from Defendant; Defendant has frequently messaged Plaintiffs, with a high volume of texts; the phone numbers which Defendant used to text Plaintiffs are provided by Bandwidth.com, which is a carrier that allows users to send text messages automatically and to send mass text messages en masse to many users.

17. These text messages were sent either by (i) Defendant, or (ii) by a third party for whom Defendant is vicariously liable because the messages were made for the benefit of Defendant and Defendant had the right to control, the ability to control, or otherwise could and should have controlled the actions of the third party.

18. Plaintiffs are neither subscribers nor clients of Defendant, have never provided Defendant with their cellular telephone number, and never agreed to receive any text messages or phone calls from Defendant. Thus, at no time did Plaintiffs provide Defendant or Defendant's agents with prior express written consent to receive unsolicited text messages, pursuant to 47 U.S.C. § 227(b)(1)(A).

19. By texting Plaintiffs, Defendant harmed Plaintiffs in the exact way that Congress sought to prevent by enacting the TCPA.

20. Plaintiffs have suffered (i) lost time in receiving and reviewing the unsolicited text messages, (ii) an annoyance and nuisance, and (iii) an invasion of privacy.

### IV.   Legal Standard

21. In 1991, Congress passed the TCPA to regulate the explosive growth of the telemarketing industry.  In doing so, Congress recognized that "[u]nrestricted telemarketing… can be an intrusive invasion of privacy." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

   *i.   Prohibitions on Automated, Artificial, and Prerecorded Telemarketing Calls*

22. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii).

23. The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

24. The 9th Circuit has explained that the statutory definition of an ATDS means "equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers." *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1052 (9th Cir. Sep. 20, 2018).

25. The Federal Communication Commission ("FCC") has also found that predictive dialers constitute an ATDS. See *In re Rules & Regulations Implementing the Tel. Consumer*

*Protection Act of 1991*, 18 FCC Rcd. 14014, 14093 (2003); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd. 559, 566 (2008).

26. In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express **written** consent" for such calls to wireless numbers. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1838 [8] ¶¶18, 20 (February 15, 2012) (emphasis supplied).

27. To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent. . . . [and] having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *Id* at 1843 [13] ¶32 (citing the FTC's rules for telemarketing calls, codified at 16 C.F.R. § 310.4(b)(v)(A)(i), (iii), (iv).

28. The TCPA regulations promulgated by the FCC define "telemarketing" as the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12).

29. In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. See *Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

30. "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id*. (citing *Chesbro v. Best Buy Stores*, L.P., 705 F.3d 913, 918 (9th Cir. 2012)).

31. The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and*

*Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call or in the future. *Id.*

32. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (July 10, 2015) (requiring express consent "for non-telemarketing and non-advertising calls").

33. The FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009).

### ii. Vicarious Liability

34. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA,* 10 FCC Rcd 12391, 12397 (¶ 13) (August 7, 1995).

35. In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 23 FCC Rcd. 559, 564 (January 4, 2008).

36. In 2013, the FCC instructed that Defendants may not avoid liability by outsourcing telemarketing to "unsupervised third parties" because this "would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is

often the case." *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6588 ¶37 (2013).

37. "[L]imiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient. Consumers "would be required to sue each marketer separately in order to obtain effective relief," which "is unlikely to make a substantive difference" and would undermine the consumer privacy objectives of the TCPA. *Id.*

38. The FCC clarified that a corporation or other entity that contracts out its telephone marketing is "vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574. This includes liability not only under principles of "formal agency, but also principles of apparent authority and ratification." *Id.* at 6584.

   ### iii.   Standing Under the TCPA

39. The TCPA provides a private right of action for persons who receive automated, artificial, or prerecorded calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

40. In an action under 227(b), a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), aff'd, 755 F.3d 1265 (11th Cir. 2014).

41. A plaintiff alleging a violation under the TCPA "need not allege any additional harm beyond the one Congress has identified." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037 (9th Cir. 2017) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016)).

42. The receipt of a telemarketing or unsolicited call "demonstrates more than a bare violation and satisfies the concrete-injury requirement for standing." *Leyse v. Lifetime Entm't Servs., LLC*, Nos. 16-1133-cv, 16-1425-cv, 2017 U.S. App. LEXIS 2607 (2d Cir. 2017) (citing *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 105 (2d Cir. 2013) ("The injury-in-fact necessary for standing need not be large; an identifiable trifle will suffice."); *Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 819-21 (8th Cir. 2015) (holding that receipt of two brief unsolicited robocalls as voicemail messages was sufficient to establish standing under TCPA).

## V.   First Cause of Action:

### Illegal Use of an ATDs, Artificial Voice, or Prerecorded Message

43. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

44. The Defendant's use of an ATDS to contact Plaintiffs constitutes a violation of 47 U.S.C. § 227(b).

45. As a result of Defendant's negligent violations of 47 U.S.C. § 227(b), Plaintiffs are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

46. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227(b), Plaintiffs are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

47. Plaintiffs are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## VIII. Relief Requested

48. WHEREFORE, Plaintiffs respectfully request the Court grant Plaintiffs the following relief against Defendant:

49. As a result of Defendant's violations of 47 U.S.C. § 227(b), Plaintiffs seek an amount not less than $1,200,000.00.

50. Plaintiffs seek injunctive relief prohibiting such conduct in the future.

51. Any other relief the Court may deem just and proper.

## IX. Jury Demand

52. Plaintiffs request a trial by jury of all claims that can be so tried.

Date: 12/23/2019               Respectfully submitted,

                               /s/ *Nicole Lewis*
                               Nicole Lewis
                               Attorney for Plaintiffs

Complaint

**VERIFICATIONS**

I, Jesse Seale, declare under penalty of perjury that I have read the foregoing VERIFIED COMPLAINT, that I know the contents thereof, and that they are true and correct to the best of my knowledge.

EXECUTED AND DATED on 12/23/2019.


/s/  *Jesse Seale*
Jesse Seale
Plaintiff
Signed with Plaintiff's permission via email 12/23/2019




I, Nils Coleman, declare under penalty of perjury that I have read the foregoing VERIFIED COMPLAINT, that I know the contents thereof, and that they are true and correct to the best of my knowledge.

EXECUTED AND DATED on 12/23/2019.


/s/     *Nils Coleman*
Nils Coleman
Plaintiff
Signed with Plaintiff's permission via email 12/23/2019